UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

Civil Action No.
05-11324 REK

WILLIAM HEBERT,

    Plaintiff,

vs.

ROBER MURPHY,
KATHLEEN DENNEHY, and
THE MASSACHUSETTS DEPARTMENT OF CORRECTION,

    Defendants.

## AFFIDAVIT OF JOEL PENTLARGE

I, Joel Pentlarge, state under the pains and penalties of perjury that:

1. My name is Joel Pentlarge, and I have been committed as a sexually dangerous person, pursuant to M.G.L. c. 123A, to the Nemankset Correctional Center since July 2004.

2. I am making this affidavit to support William Hebert's motion for appointment of counsel.

3. I was admitted to practice law in Massachusetts in 1977, and I was disbarred in 2000 after pleading guilty to five counts of statutory rape. I understand that it is illegal for me to practice law, but at the same time I have as much right as any other prisoner, to assist other prisoners in gaining access to the courts. See Bounds v. Smith, 430 U.S. 817 (1977); and Lewis v. Casey, 518 U.S. 343 (1996).

4. Several months ago another prisoner requested that I assist Mr. Hebert, because Mr. Hebert seemed particularly adrift in the legal process.

2

5. I met with Mr. Hebert. He was concerned that his situation of being committed for a day to life, seemed to him to be hopeless. He knew that he had been committed out of the Superior Court in Springfield, but he could not remember who represented him in the commitment trial. He had no copies of any of the paper work relating to his commitment trial, and had no idea whether there was an appeal pending on his commitment. Mr. Hebert knew that he had filed a petition for dicharge from the Nemansket Correctional Center in the summer of 2004, but he did not have copies of any of the papers which he had filed, nor could he remember the names of the other inmates who had assisted him filing the petition for discharge. He did not remember that an attorney had been appointed for him in the § 9 discharge proceeding, and it was only after I prepared a motion for appointment of counsel, that Mr. Hebert remembered that he had received a form from the court notifying him that Attorney Sondra Schmidt was appointed to represent him.

6. Mr. Hebert says that since he had his stroke in 1993, he has been unable to remember many of the important details of his life and he has been unable to focus himself. In my conversations with Mr. Hebert, I was struck that he has a large vocabulary which he uses appropriately and articulately, particularly for someone who dropped out of school in the ninth grade. He does have trouble focusing on details, and he is quick to jump to the metaphyical ramifications of his situation.

7. Mr. Hebert and I were able to sit down together and review his treatment file in the library. In reviewing the CAB reports, I was struck that as an incest offender who is

over the age of 45, he falls into a category of sex offenders who consistently have the lowest rates of recidivism of all sex offenders and criminal offenders in general. Mr. Hebert also suffers from a major mental illness, but this illness occurred after he committed his sex offenses, quite likely as a result of the physical damage to his brain caused by the stroke in 1993. There is nothing to indicate that Mr. Hebert's current mental illness caused his sex offending, or makes it more likely that he will reoffend. If anything the mental illness seems to have made Mr. Hebert asexual, and therefore less likely to reoffend. Mr. Hebert is suffering from the kind of discrimination against persons with disabilities, that Congress identified as a "serious and pervasive social problem." Olmstead v. L.C., 527 U.S. 581, 588-589, quoting the Americans with Disabilities Act, 42 U.S.C. §§ 12101(a)(2), (3) and (5). The discrimination against Mr. Hebert is in the form of undue institutionalization of Mr. Hebert in a level four prison, when he could be much better treated in an ordinary mental hospital or other community mental health facility.

8. I offered to help Mr. Hebert file a complaint for violation of his civil rights and his rights under the ADA. Mr. Hebert agreed to let me do this because it would atleast "give me some hope."

9. Mr. Hebert has read the entire complaint, and has a general layman's understanding of the legal theories advanced.

10. Mr. Hebert would never have been able to put together a complaint even remotely like this in his current condition. Nor would he be able to represent himself once the complainti is filed.

4.

11. I can assist Mr. Hebert in getting to the courthouse door, but that is no substitute for having an attorney admitted to practice law, who has much better resources at his or her disposal. An attorney, who can access facilities and experts outside of this prison, and who can be much more objective.

12. I have accepted absolutely nothing in return for my assistance of Mr. Hebert.

Signed under the pains and penalties of perjury this ___ day of June, 2005.

_____
Joel Pentlarge