UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

Docket No.

WILLIAM HEBERT,

    Plaintiff,

vs.

ROBERT MURPHY,
KATHLEEN DENNEHY, and
THE MASSACHUSETTS DEPARTMENT OF CORRECTION,

    Defendants.

05-11324 REK

Referred to MJ RB Collings

## COMPLAINT

INTRODUCTION

1. The plaintiff William Hebert is a person who is disabled as a result of mental illness caused by a stroke in 1993. Mr. Hebert was committed to the Nemansket Correctional Center on June 21, 2002 for a day to life, as a sexually dangerous person, pursuant to M.G.L. c. 123A, as a result of an alleged mental abnormality. Since his commitment Mr. Hebert has not been provided with effective treatment for his mental illness, nor for his alleged mental abnormality. The defendants have not made any reasonable accomodation for Mr. Hebert's mental illness. The defendants have held Mr. Hebert in conditions which are far more restrictive than necessary for a man of his disability. The conditions of Mr. Hebert's confinement are more restrictive than the prisons in which Mr. Hebert served his prison sentence from 1991 to 2000. Since he has been committed to the Nemansket Correctional Center Mr. Hebert's mental illness has worsened significantly  Mr. Hebert brings this action pursuant to the Americans with Disabilities Act and 42 U.S.C. § 1983.

JURISDICTION

2. This court has jurisdiction of the subject matter of this case under 28 U.S.C. §§ 1343 and 1347, including pendent and supplemental jurisdicton over claims under the Massachusetts General Laws for claims which are so related to the claims under §1343, that they form part of the same case or controversy.

PARTIES

3. The plaintiff, William Hebert, is a natural person, who resides at the Nemansket Correctional Center, 30 Administration Road, Bridgewater, Plymouth County, Massachusetts.

4. The defendant, Robert Murphy is a natural person, who is the Superintendent of the Nemansket Correctional Center at 30 Administration Road, Bridgewater, Plymouth County, Massachusetts. Superintendent Murphy is sued in both his individual and official capacities.

5. The defendant, Kathleen Dennehy, is a natural person who is the Commissioner of the Massachusetts Department of Correction, which has its principal place of business at 50 Maple Street, Milford, Worcester County, Massachusetts. Commissioner Dennehy is sued in both her individual and offical capacities.

6. The Massachusetts Department of Correction of the Executive Office of Public Safety has its principal place of business at 50 Maple Street, Milford, Worcester County, Massachusetts. The Department of Correction (DOC) is sued in its official capacity only, and the plaintiff seeks only prospective injunctive relief aginst the DOC.

7. All of the defendants have acted under color of law at all times relevant to this action.

STATEMENT OF FACTS

    8. The plaintiff Mr. Hebert was born at Holyoke on January 25, 1959. He is now 46 years old.

    9. In April 1990 Mr. Hebert's ten year old daughter reported to the Chicopee Police Department that she had been molested by Mr. Hebert for the preceding two years.

    10. Also in April 1990 Mr. Hebert was admitted to the Franklin County Hospital for suicidal ideation. He was discharged and received outpatient treatment. At that time he was diagnosed with Adjustment Disorder with Disturbance of Mood and Chronic Alcohol Abuse.

    11. Mr. Hebert pled guilty to three counts of rape of a child under 16 by force and indecent assault and battery on a child in March 1991. The victim was his daughter. Mr. Hebert received concurrent prison sentences of eight to ten years.

    12. Mr. Hebert served his prison sentence at N.C.C.I. Gardner, M.C.I. Shirley, M.C.I. Norfolk and M.C.I. Concord prisons.

    13. During his incarceration Mr. Hebert completed the first three phases of the four phase voluntary sex offender treatment program.

    14. In 1993 Mr. Hebert suffered a stroke, which has caused permanent damage to his ability to remember, think, concentrate and relate to others.

    15. In or about August 2000 a petition was filed to commit Mr. Hebert under G.L. c. 123A for a day to life as a sexually dangerous person to the Nemansket Correctional Center. On information and belief this petition was filed shortly before Mr. Hebert was to complete serving his criminal sentences.

16. On June 21, 2002 Mr. Hebert was committed to the Nemansket Correctional Center for a day to life, pursuant to G.L. c. 123A.

17. The defendant Kathleen Dennehy in her position as the Commissioner of Correction is authorized under G.L. c. 123A to appoint members of a Community Access Board (CAB).

18. The duties of the CAB include doing annual reviews, pursuant to c. 123A, § 6A, of each person committed to the Nemansket Correctional Center. These annual reviews include evaluation of treatment progress, recommendations for future treatment including Community Access Programs and Transition Programs, and assessment of each person's status as a sexually dangerous person.

19. Since Mr. Hebert was committed in 2002 the CAB has completed two annual reviews for Mr. Hebert on June 17, 2003 and June 1, 2004. Copies of these reviews are attached as Exhibits A and B of this complaint.

20. Copies of each of these reviews were sent to the defendant Robert Murphy in his capacity as the Superintendent of the Nemansket Correctional Center. See page 10 of Exhibit A and page 11 of Exhibit B.

21. The CAB noted in its review of 2003 that:

"According to the records, Mr. Hebert suffered a stroke
in April 1993. Reports indicate that his illogical,
bizarre speech may be a result of his stroke. There is
no additional information regarding Mr. Hebert's physical/
medical history in the records."

Exhibit A, p. 4.

22. The CAB review goes on to state:

"In either 1993 or 1994 Mr. Hebert reports that he suffered
a stroke during his incarceration. A review of the QE
[Qualified Examiner appointed by Commissioner Dennehy]

> reports which led to his 6/21/02 commitment indicates a number of odd speech patterns and some questions about the quality of his thinking, but he did not appear to any of the examiners to be frankly psychotic. Over the past year, his situation has evidently worsened. He described by his current Treatment Team as believing that he is Jesus Christ. They report that his speech is garbled and that he is usually unable to engage in productive conversation about anything."

Exhbit A, p. 7

23. The CAB review also noted:

> "Mr. Hebert's apparent psychosis is interfering to a significant degree in his decision making about the Treatment Program. There is a question of whether his disorganized speech and behavior is a consequence of his stroke from the early to mid '90s or whether he is simply becoming more psychotic over time. The question was raised by the Board in response to the Treatment Team, about whether the substituted judgment process needs to take place. The Team noted that early in his stay at the Treatment Center he was much more threatening than he is now. It was noted in a review of this record that on 1/25/01 there was a Progess Note in which Mr. Hebert while explaining his weight loss and lack of interest in eating said that, "the Devil told him not eat."

Exhibit A. p. 9.

24. The CAB questioned "whether or not Mr. Hebert's decline in terms of mental illness is legitimate, and whether it is a consequence of the stroke or whether he is becoming more significantly mentally ill." The CAB went onto recommend:

> "that there be put together by the Treatment Team a thorough and detailed chronology of Mr. Hebert's psychiatric symptoms. This needs to be done as quickly as possible so that a productive referral to a neurological work-up could be made.

Exhibit A, p. 9.

25. The CAB concluded that Mr. Hebert remained sexually dangerous, but that a thorough chronology of Mr. Hebert's behavior over the years as well as the stages of what appears to be significant mental illness would allow the CAB "to more accurately assess

whether there are changes in Mr. Hebert that are reflected in a change in his sexual dangerousness." Exhibit A, p. 10.

26. A copy of the CAB annual review for Mr. Hebert was sent to Mr. Hebert's Treatment Team. The Treatment Team concurred in the CAB recommendations, and agreed to "make the necessary arrangements to facilitate the requested chronology." Exh. A, pp. 11-12.

27. To the best of Mr. Hebert's knowledge, and after reviewing his treatment records on March 1, 2005, no one has ever put together a chronology of his behavior and/or pychiatric symptoms, as recommended by the CAB and agreed to by the Treatment Team.

28. In June 2004 the CAB conducted its second annual review of Mr. Hebert, and noted:

> "At present, the team views Mr. Hebert as a person about whom they know very little because [of] his lack of involement in the Treatment Program. In addition, he has begun showing significant signs of mental illness and has not authorized in any formal way the exchange of information between the staff of the HSU [Health Services Unit run by the University of Massachusetts Medical School under contract to the DOC] and the treatment teams. There are times in the record when Mr. Hebert talks in ways which other people find incomprehensible. Some of his thought content is religious, he seems to be talking in ways which indicate a significant thought disorder with a good deal of delusional thinking. There is great mood lability and it requires very little irritation for him to become verbally or physically threatening to others. For example, when asked why he is not participating in the Treatment Program, Mr. Hebert has said that he cannot participate in the program because it will "impair his mental health." He spends a lot to time pacing in the unit and stays by himself. He was most recently evaluated by the staff in the infirmary on this morning (6/1/04) and found to be compliant with his medications and without imminent risk of harm to himself or others. It was noted that he remains tangential but he denied any plans to hurt himself. He appears thought disordered to the staff at the infirmary, but not at immediate risk."

Exhibit B, pp. 8-9.

29. Under "Issues Remaining for Treatment" the CAB said:

"The primary issue for the upcoming weeks and months is to obtain an accurate assessment of Mr. Hebert's neurological state and his psychiatric condition. Decisions will need to be made about whether Mr. Hebert is competent to make decisions or to get permission for medical or psychiatric evaluation. There is also the possiblility that Mr. Hebert might need to be placed in a facility where relatively sophisticated neurological and brain imaging technology could be applied to determine whether his behavior flows from the stroke which occurred approximately ten years ago, or whether it reflects some deteriorating process. It is the recommendation of this board that Mr. Hebert needs to have a thorough physical examination including neurology and psychiatry and a determination needs to be made about whether his mental illness which is becoming increasingly obvious makes his participation in the program impossible or at least very difficult."

Exhibit B, p. 9.

30. The CAB concluded that Mr. Hebert remains sexually dangerous. Exhibit B, p. 11.

31. Mr. Hebert's Treatment Team received a copy of the CAB annual review and agreed with the recommendations in the CAB annual review. Exhibit B, pp 12-13.

32. To the best of Mr. Hebert's knowledge, and after reviewing his treatment records on March 1, 2005, no steps have been taken by Mr. Hebert's Treatment Team to provide him with a neurological and psychiatric assessment with brain imaging technology.

33. The conditions of Mr. Hebert's imprisonment, combined with the lack of appropriate or effective treatment, which the defendants continue to this day, has affirmatively and needlessly worsened Mr. Hebert's mental conditions with the result that the defendants and their agents on the CAB continue to urge Mr. Hebert's indefinite commitment to the Nemansket Correctional Center.

34. The defendants are holding Mr. Hebert in conditions of confinement which far exceed the least restrictive alternative, and which are substantially more restrictive and punitive than the prisons in which Mr. Hebert served his nine years in prison.

35. The defendants subject Mr. Hebert to almost all of the same punitive regulations as apply to all other prisons of the DOC.

36. At the Nemansket Correctional Center there are over four hundred state prisoners, who are still serving their state prison sentences under exactly the same conditions of imprisonment as Mr. Hebert. This includes some 300 state prisoners who are housed in the Modular section of the Nemansket Correctional Center and and some 100 prisoners who are still serving prison sentences concurrently with their civil commitment imposed under the pre-1990 version of c. 123A, housed with Mr. Hebert.

37. At the other security level four prisons that Mr. Hebert served his sentence in, he and all other prisoners had greater access to the library, the yard, the gym, and the visiting room. The yards were bigger and had substantially more amenities, including soft ball fields, soccer fields, benchs, picnic tables, bleachers, work out bars, flower gardens or vegatable gardens, which prisoners were allowed to grow. The gyms had more recreational and exercise equipment.

38. Norfolk prison had a greater variety of foods offered for sale in its canteen, and offered the prisoners greater access to cooking facilities on their units.

39. Mr. Hebert is currently double bunked in a cell with only 80 square feet of floor space. Putting two men in a cell

with only 80 square feet of floor space violates the Massachusetts State Sanitary Code, 105 CMR 410.400(B) and 451.320-321. In addition the roof leaks in Unit A-1, and has leaked for many years. This violates 105 CMR 410.500 and 451.350. The Massachusetts Department of Public Health has repeatedly cited the DOC for these violations in reports sent to Superintendent Murphy.

40. The defendants serve Mr. Hebert the same food that is served to all other prisoners in DOC custody, with the same excrable preparation in a "chow hall" that is overcrowded. With the issuance of the new recommended dietary guidelines of the U.S. Department of Agriculture and Department of Health and Human Services, the food served to Mr. Hebert no longer complies with those dietary guidelines.

41. Upon information and belief the Massachusetts Department of Correction and or the Executive Office of Public Safety receives or has received funding from the United States government.

42. Other prisons that Mr. Hebert has served his sentences in have far greater opportunities for prison employment and for earning money.

43. The defendants have failed to make a reasonable accomodation in employment opportunities to Mr. Hebert due to his handicap.

44. The defendants have failed to make a reasonable accomodation to Mr. Hebert's handicap by offering educational and

45. Mr. Hebert's only sex crimes are for incest with one victim.

46. Incest offenders have the lowest rate of recidivism of all sex offenders.

47. Sex offenders over the age of 45 have the lowest rate of recidivism of all sex offenders.

48. Mr. Hebert falls into the two lowest categories of sex offenders in terms of recidivism.

49. The mental illness which Mr. Hebert currently suffers from occurred after he was arrested and was serving his sentence in 1993, so Mr. Hebert's current mental illness is not related to his sex offending.

50. In the annual reviews of the CAB contains no information or reliable evidence which distinguishes Mr. Hebert from the dangerous but typical recidivist in an ordinary criminal case.

51. The only thing that distinguishes Mr. Hebert from the dangerous but typical recidivist in an ordinary criminal case, is that Mr. Hebert belongs to a class of sex offenders and is of age that he is substantially less likely to reoffend than the typical recidivist in an ordinary criminal case.

52. The imprecise and unreliable evidence used by the CAB and the defendants to justify Mr. Hebert's continued detention, combined with the legislatively mandated punitive conditions of confinement, and the defendant's overly restrictive implementation, have turned Mr. Heberts "civil" commitment into a mechanism for continued retribution or general deterence.

53. The conditions which apply to Mr. Hebert, also apply to all other "civilly" committed inmates at the Nemansket Correctional Center.

54. The defendants have violated Mr. Hebert's rights to substantive due porcess of law under the Fourteenth Amendment to the United States Constitution and G.L. c. 123A. § 6A by:

   a) failing to treat Mr. Hebert more considerately than he was treated when he was a prisoner;

   b) failing to provide him with the least restrictive conditions of confinement necessary to achieve the purposes of his commitment;

   c) failing to provide him with treatment which does not depart from accepted professional judgment, practice, or standards, and which has been recommended by both the CAB the Treatment Team;

   d) by subjecting him to conditions which have affirmatively and needlessly worsened his mental health;

   e) by detaining Mr. Hebert longer than necessary on the basis of unreliable and imprecise evidence, and without a reliable mechanism to secure an impartial review of his status on at least an annual basis.

55. Under the provisions of G.L. c. 123A, § 9, Mr. Hebert filed a petition for discharge in the Hampden County Superior Court on August 12, 2004, docket no. HDCV2004-00792. With that petition for discharge, Mr. Hebert filed a motion for speedy hearing.

56. Mr. Hebert has not received a hearing on his motion for speedy hearing.

57. Petitions for discharge are all heard by one "Unified Session" of the Massachusetts Superior Court. Petitions are heard in the order in which they are filed, and at the present time they heard between three and four years after they are

filed.

58. Mr. Hebert is is a handicapped or disabled person, because his mental illness substantially limits one or more of his major life activities.

59. Mr. Hebert is entitled to receive treatment for his mental illness in the most integrated setting appropriate to his needs, which include in the setting of a regular mental hospital (not a hospital for the criminally insane) and such community based treatment as the treatment professionals in a regular mental hospital determine to be appropriate, as required by the Americans with Disabilities Act, 42 U.S.C. § 12132, and 28 CFR § 35.130(d) (1998), and 28 CFR pt. 35, App. A, p. 450 (1998).

RELIEF

Wherefore the plaintiff requests that the court grant the following relief:

1. Appoint counsel and/or a guardian ad litem for the plaintiff.

2. Grant actual and punitive damages against those defendants who have been sued in their individual capacities, Robert Murpy and Kathleen Dennehy, as provided by 42 U.S.C. § 1983, including costs and attorney's fees, as provided by 42 U.S.C. § 1985.

3. Grant the plaintiff prospective injunctive and remedial relief against all of the defendants as provided by 42 U.S.C. § 1983, 29 U.S.C. 794 and 42 U.S.C. 12101, ordering the defendants to immediately:

a) refrain from imposing any conditions of confinement which are more restrictive than necessary to protect Mr. Hebert, the public, other inmates and the staff;

b)   provide Mr. Hebert with appropriate treatment which does not depart from accepted professional judgment, practice, or standards, and which has been recommended by the state's treatment professionals;

c)   treat Mr. Hebert more considerately than he was treated when he was a prisoner, and more considerately than prisoners in the custody of the Department of Correction are now treated;

d)   refrain from subjecting Mr. Hebert to conditions which needlessly and affirmatively worsen Mr. Hebert's mental health;

e)   assist Mr. Hebert in obtaining appropriate less restrictive conditions of confinement and remedial services as offered by the Massachusetts Department of Mental Health, in any setting other than a hospital for the criminally insane;

f)   provide Mr. Hebert with independent psychiatric or psychological and or neurological experts and any tests that they recommend or other consultations at the defendants' expense.

4.   Order that the defendants schedule and proceed in good faith with a hearing on the defendant's petition for discharge on before August 12, 2005, or release the defendant.

5.   Grant such further relief as justice and equity require.

William Hebert, Plaintiff

_William L. Hebert_
William Hebert, Pro Se
Nemansket Correctional Center
30 Administraiton Rd.
Bridgewater, MA 02324

June 2, 2005

June 4, 2005

William Hebert
Nemansket Correctional Center
30 Administration Rd.
Bridgewater, MA 02324

Clerk
U.S. District Court
1 Courthouse Way
Boston, MA 02210

Re:  Hebert v. Murphy, et al.

Dear Clerk:

    Enclosed please find for filing in the above entitled action the following:

    1.    The complaint.

    2.    The civil cover sheet.

    3.    The Application to Proceed In Forma Pauperis.

    4.    The Plaintiff's Motion for Appointment of Counsel and/or a Guardian ad Litem.

Will you please present the Application to Proceed in Forma Pauperis to the court for consideration. Please note that as a civilly committed person, I am not subject to the Prison Litigation Reform Act. See King v. Greenblatt, 53 F.Supp.2d 117 (D. Mass. 1999).

    Please present my motion for appointment of counsel to the court for consideration.

    Please send me three summonses, one each for the defendants Robert Murphy, Kathleen Dennehy and the Massachusetts Department of Correction.

    Thank you.

                             Very truly yours,

                               William Hebert

cc:    Attorney Sondra Schmidt
        Attorney Mary Murray, DOC Legal
        Attorney John Swomley
        Attorney Harry Miles
        Attorney Douglas Walker

14

## Verification

I, William Hebert, state under the pains and penalties of perjury that I have read the preceding 13 pages of this complaint. I understand the facts which are stated in the complaint and they are true.

Signed under the pains and penalties of perjury.

June    , 2005

_____
William Hebert

WH/jp

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as re by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for t of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS
William Hebert
Nemansket Correctional Center
30 Administration Rd.
Bridgewater, MA 02324

### DEFENDANTS
Robert Murphy, Kathleen Dennehy, and
The Mass. Dept of Correction
50 Maple St., Milford, MA 01757

05-11324 REK

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: Plymouth
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT: Plymouth
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
William Hebert, Pro Se
Nemansket Correctional Center
30 Administration Rd.
Bridgewater, MA 02324

ATTORNEYS (IF KNOWN)
Attorney Mary Murray
Nemansket Correctional Center
30 Administration Rd.
Bridgewater, MA 02324

### II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLA AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF |
|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 |

### IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | PERSONAL PROPERTY | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | LABOR | SOCIAL SECURITY | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| 220 Foreclosure | ☐ 442 Employment | HABEAS CORPUS: | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 740 Railway Labor Act | FEDERAL TAX SUITS | ☐ 900 Appeal of Fee Determinati Under Equal Access to Jus |
| 240 Torts to Land | | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| 245 Tort Product Liability | ☐ 444 Welfare | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| 290 All Other Real Property | ☒ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

### ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

### CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

This is a conditions of confinement action brought pursuant to 42 U.S.C. §§ 1983 and 12101 challenging the conditions of confinement for a disabled civilly committed person.

### REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

### RELATED CASE(S) IF ANY (See instructions):
JUDGE Saris
DOCKET NUMBER 04-30177-PBS
05-10286-PBS

6-8-05

SIGNATURE OF ATTORNEY OF RECORD
William L. Hebert jr

OFFICE USE ONLY

RPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) **Hebert v Murphy**

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

   - I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.
   - **X** II.  195, 368, 400, **(440)**, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    *Also complete AO 120 or AO 121 for patent, trademark or copyright cases
   - III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.
   - IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.
   - V.   150, 152, 153.

   **05 - 11324 REK**

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.
   Pentlarge v. Murphy, 04-30177 and DiModica v. Murphy, 05-10286
   **05-10286**

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?
   YES    **NO**

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC §2403)
   YES    **NO**
   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
   YES    NO

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?
   YES    **NO**

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).
   **YES**    NO

   A. IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?
      **EASTERN DIVISION**    CENTRAL DIVISION    WESTERN DIVISION

   B. IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?
      EASTERN DIVISION    CENTRAL DIVISION    WESTERN DIVISION

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME **William Hebert, Pro Se**
ADDRESS **30 Administration Rd Bridgewater MA 02324**
TELEPHONE NO. _____

(Cover sheet local.wpd - 11/27/00)

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

## CLERK'S NOTICE

The image of this document is not viewable because it is either SEALED or filed EX PARTE.